This is John Vodonik for the appellant Mary Abbott. And Mr. Johnson, you're also on the telephone? Yes, Your Honor. Well, why don't we go forward. Keep track of your time. It's ten minutes aside. And Mr. Vodonik, you'll go first. Try to keep track of the time if you wish to reserve time for rebuttal. Thank you very much, Your Honor. I would like to reserve half of my time for rebuttal. Okay, well, you keep track and we'll try to help you, but do your best. I have my stopwatch running. Okay. The district court granted Mr. Okoye's motion for summaries about judgment as a matter of law. It did not consider any factual basis. Excuse me, counsel. This is Judge Kleinfeld. Could I ask you a couple questions? Of course. I read the stipulation for settlement. Yes. You're Abbott's lawyer now, right? I am. But at the time, it's signed by counsel for Abbott, which was her late husband, George W. Abbott. Her late husband and her ex-husband at that time. Either way, he was the lawyer on the case. He was. Now, tell me if I've got the facts right. Okoye had won a $350,000 judgment against George Abbott for malpractice. George Abbott subsequently got a half million from an estate he was handling. He put the half million into a family trust instead of paying Okoye's judgment. And when Okoye tried to get the $350,000 back out of the trust in Nevada, he lost because he'd registered his judgment too late. Have I got that right so far? With one little twister on it. He registered the judgment and then let it lapse. That was in Nevada, right? He was subject to statute of limitations as far as what happened. Counsel, my recollection is it was a judgment that he registered in Nevada, and it was uncollectible in Nevada because he let it lapse. But it was also registered in California, and it was not uncollectible in California. Is that correct? That is correct, Your Honor. I don't remember at the moment. Was it a California judgment or a Nevada judgment? The original judgment was a California judgment from, I believe, Orange County that was eventually registered, was domesticated in Nevada. Nothing was done for a while, and eventually it got lapped. Okay. Now, when this Nevada case was settled, there was a written stipulation signed by the parties and by counsel for both sides here. Correct. I wrote an awful lot of stipulations to dismiss and releases, both from plaintiff's side and the defense side, when I was in practice. And I don't think there was ever a single one, except for oddball ones where the intentions were different, that didn't say I release all claims from the beginning of time to the present day, covenant not to sue on any such claims, and covenant not to execute on any such claims. And this didn't start with me. I was very unoriginal. This is just standard form book language. And I looked at this stipulation. I don't see release. I just see the stipulation, and it doesn't say anything like that. No, Your Honor, it does not say anything like that. Mr. Abbott did not draw the stipulation. Your argument is that the covenant of good faith and fair dealing requires us to read it as though it did. And my thinking is just the opposite, that the thing that speaks loudest is the silence. And covenant of good faith and fair dealing would mean if you have a contract to pay $2,000, it means American dollars and not Hong Kong dollars, even though it doesn't say U.S. dollars. But to plug in the language that's the most obvious language, and under the covenant of good faith and fair dealing, I'd be more inclined to read the opposite language into it. What am I missing there? Well, you're missing two things, Your Honor, respectfully. First of all, there are two covenants that are implied. There is a covenant implied in this particular agreement, this particular settlement agreement, the stipulation for settlement, and that is a covenant not to sue, which this Court has expressly and squarely found to exist. Where does it say that? All California courts that have dealt with the issue have squarely found to exist in every settlement agreement. Well, there are settlement agreements and settlement agreements. Would you say it exists in a settlement agreement that says we settle one particular claim, the civil conspiracy claim, but the plaintiff is free to sue on other claims? Would you say that the covenant not to sue exists in that settlement agreement? No, Your Honor, and this is the reason why. Implied covenants are by their nature implied. They are rules not of substantive law, but they are rules of construction, and they are used primarily to ensure that the parties do not take advantage of each other. They are implied by the language that is used. Look, if we inferred what you suggest, why wouldn't that be Mary Abbott taking unfair advantage of Chris Okoye by ripping him off for $348,000? Well, for two reasons, Your Honor. First of all, because I don't think that it stands to reason at all that Mary Abbott would pay $2,000 in settlement of the claims, the balance of which had been already dismissed by motions for summary judgment in the Nevada State Court. No, only the collection attempt in Nevada had been dismissed. He had a perfectly good claim that was reduced to and merged into a judgment in California, and the judgment was alive and not lapsed. It's a perfectly good California claim for more than a third of a million bucks. It would be a good California claim if there was anything in California that could be executed on, and there wasn't. And that is the fact, and that is why we have a federal system that allows various states to adopt various rules of substantive law. That's Okoye's problem, as it is with any successful plaintiff. Any successful plaintiff. If the defendant manages to sneak the money out of the jurisdiction, it's hard to get it. But that doesn't bear on the good faith and fair dealing covenant. Well, I think the question, Your Honor, is first of all whether or not the district court refused to consider the law of the state of California, the law of this circuit, which implies a covenant not to sue every settlement agreement, and secondly, what the reasonable expectations of the parties were. And the more cogent question here is really this. If it was Okoye's intention to reserve claims to be sued on elsewhere, for example, California, and then bring that California judgment once again back to Nevada, wasn't it incumbent upon Okoye to say, in that stipulation drafted by counsel for Okoye, reserving, however, the right to come to California or any other state or any other country or any other jurisdiction, sue again and re-litigate these issues? Isn't that incumbent? Doesn't public policy, doesn't the policy of this court foster repulsive litigation? Or should it foster the incredibly increasing prolific litigation that we have in Nevada? Counsel, you make a good point there. The reason I keep cutting you off is these time limits apply to the judges as well as the litigants. I had another question for you. Okay. It seems to me that since this stipulation was made in Nevada for a Nevada case, you would probably use Nevada law in the covenant of good faith and fair dealing, though I don't think it really makes a difference. No, it doesn't. What is your best Nevada case for the proposition that we should always infer a covenant not to sue from any sort of stipulation for settlement? Well, Nevada law does not deal with this subject at all that my research can find, and, therefore, I would argue that Nevada is going to comply with common choice of law rules and defer to the law of the state of California. That's not where the contract was executed and it's not where the contract was intended to be performed. But even if we were to agree on that, tell me what is your best California case for the proposition that we should always infer a covenant not to sue or execute from any stipulation for settlement?  Well, that would be the SOS versus payday case from this court, and the case is cited therein. Okay. We've taken you down to 37 seconds. Why don't we hear from the other side, but we'll make sure you get enough chance to respond. Thank you, Your Honor. Thank you, Your Honor. Mike Johnson for Applebee's. Chris Akoya. I'll start by addressing counsel's question, kind of a rhetorical question, but it was, you know, was Mr. Akoya's intention, you know, did Mr. Akoya do something to express his intention to pursue this claim in California as was effectively invited to do by the Nevada State Court? The answer is yes. Again, condition number one of the stipulated first settlement, this could have been resolved as most lawsuits are by way of a dismissal with or without prejudice, but this is not. I think I must be looking at the wrong document. I'm looking at the stipulation for settlement order thereon. That's what I'm looking at, exactly. Okay. Item number one of that. I don't see any conditions here. I see item number one. I don't understand what you're inferring from. Right, right. Well, rather than simply dismiss the Nevada lawsuit, this stipulation, and this was for a specific reason, said that the district court's order of summary judgment shall be entered as a final judgment in order of the court. And the intention here was that, I mean, again, the state district court had just found that there was a fraudulent transfer. It just couldn't do anything about it because the Nevada domesticated judgment had run out in Nevada after six years, if not renewed, the judgment expires. Let me ask the question that was raised by your adversary. The plaintiff, the plaintiff's lawyer did not put the usual language of releasing all claims from the beginning of time to the present day and covenanting not to sue or execute thereon. And your side did not put in any reservation language, reserving, however, the right to pursue the claim in California or elsewhere. Well, it's not explicit in this document. However, again, this document makes specific reference to the court's order of summary judgment, which talks about a valid claim in another jurisdiction. And there's only one reason. If you just want to wrap up the lawsuit in Nevada, it could have been done by virtue of dismissal. But that was not the intention. The intention here was for Mr. Akoye to pursue his valid claim in another jurisdiction. And in fact, had he been required to litigate the case, he could eventually obtain a judgment by default in California state court. Can I interrupt? This is Judge Fletcher. You say that the settlement references a valid claim in another jurisdiction. Where's that language? Well, it references the summary judgment order. And the summary judgment order on page five, this is in the appendix, page 27 of 60, starting at line three, Akoye has established the elements to prevail on his fraudulent transfer claim. I'm quoting, despite his inability to collect the underlying judgment in Nevada, Akoye retains a valid claim in another jurisdiction. So the intent here was to take the language. So direct me to that language in the summary judgment. Oh, again, we're talking about the state court summary judgment order. Yes, yes, I understand. Can you direct me to that? Yeah, it's in the appendix, page 27 of 60. Hang on, hang on a second. I've got excerpts of record. Right. In the excerpts of record? I'm sorry, the excerpts of record, yes. 27 of 60. 27 of 60. OK, what particular page are you referring me to? Page five of this June order of the Nevada District Court, starting at line three. Oh, I see, where it says Akoye retains a valid claim in another jurisdiction. Right. On line six? Line three through six of page 27. I'm with you. And when he retains a valid claim in another jurisdiction, what does that mean? That is to say he has a judgment that's not lapsed in the other jurisdiction? Well, I think it was more than that. I think what the state district court was saying is he's established all the elements for fraudulent transfer. Just the state of Nevada, the courts of the state of Nevada can't give Mr. Akoye any remedy because his judgment that had been registered there has since lapsed. But what the intention was was to take this, armed with the collateral estoppel effect of this, take it over to a California state court and reduce it to a California fraudulent transfer judgment. Of course, the judgment in California had been renewed in a timely manner and therefore would have been able to reduce it to a money judgment in California, which is essentially what happened. So, again, it's this language. You know, absent this language, well, with this language, it's very clear the district court in Nevada was inviting Mr. Akoye, take your claim to California where you've got an enforceable judgment, go ahead and pursue it. And, in fact, the district court made a finding that there had been a fraudulent transfer. And, again, I think it's significant to note that this lawsuit in Nevada was resolved by way of this being entered as the final judgment in order of the court. Whereas the civil conspiracy claim, for example, that was dismissed. And, you know, there was no, with that dismissal, voluntary dismissal, there wouldn't have been a race judicata effect on that civil conspiracy claim and that wasn't really the issue here. The issue was we've got a finding in Nevada that there's a fraudulent transfer, let's take it to California, let's pursue it. Meanwhile, there's still this Nevada lawsuit, there's still this viable claim that the court suggested we have a trial on. That wasn't something we wanted to mess with. That wasn't something that was a big issue. Let's dismiss it. Let's move on. Let's take the case to California where it needs to be litigated. Let me ask you this, if I can. There's a lot of unexplained behavior in this case. Why did your client let the Nevada judgment lapse? I mean, he's got a good judgment for a fair amount of money. There appear to have been no assets in California ever. We've got a Nevada lawyer who's the defendant, who I assume even then had assets long before he got this fee out of the estate. What's going on? I mean, why was your client not enforcing his perfectly valid judgment? I really don't know, Your Honor. It predates my involvement. My general understanding is that there were attempts made to execute on the judgment in Nevada. Those were unsuccessful. After a few years of that, I think they got discouraged and it was being handled, frankly, by a California attorney who obtained an employment discrimination claim that Mr. Abbott malpracticed on back in the early 90s that led to this. Maybe he wasn't aware that judgments in Nevada expire in six years as opposed to ten years in California. I think it was a mistake through oversight that it expired. I really don't know the reason, but I think the important issue is counsel did keep it renewed and enforceable and subject to execution in California. As Mr. Vedonik points out, apparently there aren't any assets in California to execute on. But again, the intent was go to California, get the fraudulent transfer judgment for a monetary amount against Mrs. Abbott, which was done, and now that judgment, that new judgment, this new fraudulent transfer action, the first judgment against Mrs. Abbott, of course, this can be domesticated in Nevada and executed on. That's what we're attempting to do at the moment. Do you know for a fact whether it was a mistake? I used to win judgments, record them, and forget them. If the people tried to sell a house, they'd have to pay us off first because there were so many exemptions from execution that it was really hard to collect them. Well, I don't think they ever received any money on it. It could have been some minuscule amount of money, but it certainly wasn't satisfied. What I asked you was, you said it was an oversight to let it lapse in Nevada. I question whether you knew that or whether you were speculating. Oh, I'm guessing. That's a guess. I don't know for sure why that happened. Obviously, had it been handled correctly, it would have been renewed in the 90 days preceding the six-year expiration. Where did George Abbott live and practice law? Minden, Nevada, Douglas County, Nevada. I live in Washington, D.C., Your Honor. Thank you. Okay, if that's enough, are you finished, Mr. Johnson? Only one final thought, which is there's discussion now about choice of law, and I'm sure that's because Appellant wishes to avoid this American Bank stationary case where the Nevada Supreme Court has basically said if you want a covenant not to sue, include a covenant not to sue. I would just note for the Court that neither at the Court below nor even in the opening brief did Appellant make any discussion at all of the choice of law. In fact, the Federal District Court noted that. I didn't even think it was an issue that there was going to be an argument over California law until I got the reply brief from Appellant, so I don't think this Court should consider arguments being raised for the first time by Appellant regarding choice of law. What's your answer, again, to your adversary's comment? You say if you want a covenant not to sue, say so. And your adversary says if you want to reserve a right, say so. The answer is the American Bank stationary case says if you want the covenant not to sue, it's up to you, it's incumbent upon you to have that included. And, by the way, the invitation that the District Court, the State District Court extended to pursue it in another jurisdiction, again, that by reference, not by the explicit language of the stipulation, but by the order that's referenced therein, basically invites us and encourages us to pursue the claim in the other jurisdictions. Okay. Thank you very much. Thank you. Mr. Vannatic, we took you over time. Why don't we give you a minute to respond, and we'll see if that's enough. Thank you, Your Honor. First of all, in answer to the question, what is the best California case regarding the covenant not to sue, that would be Pettit v. Sonocone Corporation as cited at page 13 of our opening brief. Secondly, the Nevada case that has been cited by counsel is certainly not on point. It is taken out of context, and it is fixed. That case is not pertinent or authoritative for any issue before this Court. Finally, the so-called order of the Nevada State Court referencing an ongoing valid claim in California is, one, dicta. It was not necessary to decide the issue in Nevada. The issue in Nevada was whether or not McCoy had a claim in Nevada, not whether he had a claim in California or Arkansas or France or anywhere else in the universe. Excuse me if I can interrupt. This is Judge Fletcher again. We're trying to figure out from silence what the parties might have intended, and now, aided by the argument of your adversary, I'm reading this stipulation or settlement as paragraph number one, we enter the order of summary judgment, and we were referred to certain language in the summary judgment, and then in paragraph two, it says the sole remaining claim was unresolved by the summary judgment. We're settling for $2,000. So it's possible to read that according to your adversary as saying, okay, well, this is a settlement as to the remaining claim. As to the first, as all the other claims, we're referring to those in paragraph one. That's been resolved, and resolved according to your adversary by saying, you know, you have a valid claim in California. You just don't have one here. So why am I supposed to read the settlement language, which is contained in paragraph two, and referring only to the remaining claim as a settlement for the claims referred to in paragraph one? The stipulation for settlement, the order thereon that has been referred to in this hearing, is actually in opposite to the order of the Nevada State Court's order. The stipulation for settlement drafted by counsel for a ploy recites that, quote, a ploy's sole remaining claim was for civil conspiracy, but the Nevada court ruled that the remaining claims were for fraudulent transfer and civil conspiracy. Thus, the claims that were subject to dismissal with prejudice for the operation of the stipulation for settlement were for civil conspiracy and fraudulent transfer. The stipulation itself makes the order of the Nevada court that determines that the claims that were left for litigation were civil conspiracy and for fraudulent transfer the final order of the court, which was dismissed. So the stipulation itself is contrary to the record which is adopted by the stipulation. Counsel, it says at page 32 of the excerpts of record, page 10 of the Nevada superior court order, that the summary judgment is granted on the fraudulent transfer claim, but it says that the motion to dismiss is granted with respect to all claims except the fraudulent transfer and civil conspiracy claims. That's the page 35, line 21 through 25, and page 32, line 15 through 20, Honor. And that's the point I'm trying to make, is that the stipulation drafted by counsel for a ploy is, at minimum, ambiguous in that respect, and it simply does not reflect the order of the district court, the Nevada district court. So your point here, I'm now reading the conclusion. The court grants Abbott's motion to dismiss with regard to all causes of action against him except the fraudulent transfer and civil conspiracy claims. So the summary judgment doesn't dispose of the fraudulent transfer claims, and therefore, when we're referred to that judgment, we're not referred to the fraudulent transfer claims. That has to be part of the settlement then. That's your argument. Exactly, Your Honor. I got it. Okay. Thank both sides for your argument. The case of Abbott v. Okoye is now submitted for decision. Thank you very much. Thank you.
judges: Hug, Kleinfeld, Fletcher